IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:22-CV-271-KDB-DCK

| | |
|---|---|
| **CHARLES ALLEN FOWLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Opening Brief" (Document No. 9) and "Defendant's Brief" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff Charles Allen Fowls ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning November 6, 2019. (Transcript of the Record of Proceedings ("Tr.") 13, 149-156). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on May 13, 2020, and again after reconsideration on August 26, 2021. (Tr. 13, 44-52, 69-71). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> Your condition results in some limitations in your ability to perform work related activities. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age and education in determining how your condition affects your ability to work. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(Tr. 70).

Plaintiff filed a timely written request for a hearing on September 25, 2021. (Tr. 13, 77). On May 4, 2022, Plaintiff appeared and testified at a hearing before Administrative Law Judge Colin Fritz (the "ALJ"). (Tr. 27-43). In addition, Catrinya Dunn, a vocational expert ("VE"), and Russell Bowling, Plaintiff's attorney, appeared at the hearing. Id. at p. 27.

The ALJ issued an unfavorable decision on May 18, 2022, denying Plaintiff's claim. (Tr. 10-26). On June 10, 2022, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on October 25, 2022. (Tr. 1-7). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 23, 2022. (Document No. 1). On January 5, 2023, the undersigned was assigned to this case as the referral Magistrate Judge.

"Plaintiff's Opening Brief" (Document No. 9) was filed May 12, 2023; and "Defendant's Brief" (Document No. 15) was filed August 11, 2023. "Plaintiff's Reply Brief" (Document No. 16) was filed August 24, 2023.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Kenneth D. Bell is now appropriate.

# STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d

251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

**DISCUSSION**

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between November 6, 2019, and May 18, 2022.[1] (Tr. 13, 21). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 19-21).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since November 6, 2019, the alleged disability onset date. (Tr. 15). At the second step, the ALJ found that chronic myeloid (myelogenous) leukemia (CML) was a severe impairment.[2] (Tr. 15). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 16).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform light work activity, with the following limitations:

> [T]he claimant [can] perform light work… over the course of an 8-hour workday, in 2-hour increments, except he can occasionally climb ladders, ropes, or scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and he can occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights.

(Tr. 17). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At the fourth step, the ALJ held that Plaintiff had no past relevant work. (Tr. 19). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a cafeteria attendant, a cleaner, and a counter clerk. (Tr. 20). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between November 6, 2019, and the date of the decision, May 18, 2022. (Tr. 21).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following error: "The ALJ erred by improperly evaluating the medical opinion evidence proffered by Dr. Mault per 20 C.F.R. § 416.920c, and failing to explain how it informed [the] RFC assessment." (Document No. 9, p. 9). The undersigned will discuss this contention below.

**A. Failure to Properly Evaluate Dr. Mault's Medical Opinion and Explain How it Informed the RFC Assessment.**

Plaintiff alleges one error, asserting two sub-arguments. Plaintiff argues that the ALJ's decision is the "product of legal error" because (1) the ALJ mischaracterized the evidence of record, and (2) the ALJ's "short and cursory" analysis of Dr. Mault's opinion does not satisfy the minimum articulation standards set out by the regulations and the law of the Fourth Circuit. (Document 16, p. 1-2). In short, Plaintiff argues that the ALJ's assessment of Dr. Mault's opinion is "short and conclusory" and "runs afoul of the governing regulations." (Document No. 9, p. 10).

First then, Plaintiff argues that the ALJ "plainly mischaracterized the overall evidence of record in an effort to manufacture support for his discrediting of Dr. Mault's opinion." Id. at 13. Specifically, Plaintiff points to the ALJ's "broad statement," which found that the "medical

6

evidence of record shows the claimant responded well to [chemotherapy] treatment." Id. at p. 10 (citing Tr. 19). However, Dr. Mault's assessment of Plaintiff's physical limitations in his medical source statement advises that "the unpredictability of CML [leads] to frequent headaches and frequent exacerbation of pain." Id. Plaintiff states that the ALJ's statement "grossly mischaracterized" the evidence by "simply showing" Plaintiff's positive response to this chemotherapy treatment, yet there were "numerous" complications from the treatment – such as upper respiratory infections. Id. at pp. 10-12. Plaintiff further asserts that "an unbiased review of the medical evidence of records offers no support" for the ALJ's finding of good tolerance to the chemotherapy treatment and a lack of significant symptoms incident to CML. Id. at p. 12 (citing Tr. 19).

Second, Plaintiff argues that the ALJ failed to explain how Dr. Mault's opinion was inconsistent with or unsupported by the record. Id. at p. 13. For example, Plaintiff states that the ALJ's discussion of Dr. Mault's opinion was "insufficient to pass a legitimate consistency analysis" because the ALJ failed to engage in a "meaningful assessment of supportability" by relying on the use of summarizations of medical evidence provided earlier in the decision. Id. Plaintiff suggests that "'a narrative discussion describing' [] the evidence" is required for each conclusion reached by the ALJ. Id. at 14 (quoting Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021)). Plaintiff goes on to state that a "proper RFC assessment" requires evidence, a logical explanation, and a conclusion, and the ALJ's failure to provide a "logical explanation" has "culminated in an unsupported RFC assessment." Id. at 14 (citing Thomas v. Berryhill, F.3d 307, 311 (4th Cir. 2019)).

In response, Defendant contends that the ALJ is not required to "list each of the regulatory factors for opinion evaluation in the decision." (Document 15, p. 7) (citing Davis v. Astrue, 2012

7

WL 555782, at *8 (E.D.N.C. Jan. 5, 2012)). Accordingly, Defendant argues that the ALJ "thoroughly assessed Dr. Mault's opinion in accordance with the regulations," considering the contradictions and inconsistencies between Dr. Mault's opinion and the evidentiary record. Id. pp. 7-9. For example, Defendant states that the ALJ's RFC assessment considered both the symptoms presented by the Plaintiff, and the "generally effective treatment and examinations"; the ALJ included limitations in the RFC that were consistent with evidence regarding Plaintiff's impairments and symptoms. Id. at p. 9-10. Defendant argues that "in light of the deference due to the ALJ… the ALJ provided sufficient reasons for his determination… supported by 'such relevant evidence as a reasonable mind might accept as adequate.'" Id. at p. 9 (citing Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)).

Additionally, Defendant further argues that, in challenging the ALJ's RFC determination, "Plaintiff simply ignores that he has the burden to prove the extent of his limitations." Id. at p. 10. Defendant goes on to state that "it is not the ALJ's burden to prove a lack of limitations." Id. at p. 10 (quoting Durham v. Saul, 3:20-CV-295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021)). Defendant states that Plaintiff did not meet his burden, since the "evidence fails to support great[er] limitations than what was provided in the RFC." Id. at p. 10.

As will be explained below, the undersigned finds that the ALJ properly evaluated Dr. Mault's opinion and explained how it informed his RFC assessment, in accordance with the relevant regulation. See 20 C.F.R. § 416.920c. While the previous rule regulating ALJs' evaluation of medical opinion evidence required assigning controlling weight to the opinion of a treating physician – upon meeting certain criteria – that rule does not apply to supplemental security income claims and disability claims filed after March 27, 2017. See 82 Fed. Reg. 5844-01; see also Campero v. Comm'r of Soc. Sec. Admin., 1:21-CV-91-GMC, 2023 WL 3590697, at

*4, n.4 (W.D.NC. Apr. 21, 2023) (citing Dowling v. Comm'r of Soc. Sec'y Admin., 986 F.3d 377, 384, n. 8 (4th Cir. 2021)).

Given that this claim was filed on November 6, 2019, the new regulation governs. Pursuant to 20 C.F.R. § 416.920c(a), an ALJ is now required to consider and articulate how persuasive he or she finds each medical opinion to be. In doing so, the ALJ is to consider the following factors when evaluating medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(1)-(5). Additionally, ALJs should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. § 416.920c(a).

Here, the Plaintiff first argues that the ALJ mischaracterized the evidence in discussing the persuasiveness of Dr. Mault's medical source statement from May 2022. (Document No. 9, p. 10). As an initial matter, the undersigned is mindful that an RFC assessment is a legal decision, not a medical decision, and "it is the sole responsibility of the ALJ, and only the ALJ, to assess a claimant's RFC." Williams v. Kijakazi, 5:21-CV-6-MOC, 2022 WL 821374, at *6 (W.D.N.C. Mar. 17, 2022) (citing 20 C.F.R. § 416.946(c)). Additionally, it is solely within the purview of the ALJ to consider "all relevant medical and other evidence" when evaluating a medical opinion. See id. (quoting 20 C.F.R § 416.945(a)(3)). Here, Dr. Mault, claimant's treating physician, recommended the following in his medical source statement:

> [Claimant] could sit/stand/walk for less than two hours in an eight-hour day and that he would be absent from work more than three times a month, which would preclude the ability to perform competitive employment under Social Security Regulations.

(Tr. 19, 481-8).

9

Case 1:22-cv-00271-KDB-DCK    Document 17    Filed 06/11/24    Page 9 of 15

However, the ALJ was not bound to follow Dr. Mault's determination regarding claimant's limitations, or his ability to compete in the job market. "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the [ALJ] to make the ultimate disability determination." Rickman v. Astrue, 1:10-CV-2, 2011 WL 5418733, at *6 (W.D.N.C. Nov. 9, 2011) (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2022)); see also Sharp v. Colvin, 660 Fed. Appx 251, 256 (4th Cir. 2016); see also Fischer v. Astrue, 1:09-CV-166, 2010 WL 3211053, at *5 (W.D.N.C. July 21, 2010). Thus, the RFC assessment, and the ultimate disability determination, is reserved for the ALJ.

In the present case, the ALJ extensively chronicled claimant's medical record both immediately before and after claimant's CML diagnosis. (Tr. 18-19). The ALJ acknowledges claimant's weight loss, feelings of fatigue, and other symptoms that led to the CML diagnosis. (Tr. 18). The ALJ discusses claimant's response to his chemotherapy treatment, as well as updates from claimant's subsequent visits with Dr. Mault and claimant's treating oncologist, Dr. Heaberlin – discussing visits starting on October 30, 2019, through a follow-up visit in December 2021. (Tr. 18). For example, the ALJ discusses improvements in claimant's blood counts and appetite after starting on tyrosine kinase inhibitor (TKI), and further improvements in white blood cell and platelet counts after claimant was put on Tasigna. (Tr. 18) (citing Tr. 406, 409, 411). While the ALJ acknowledged reports of cramping in claimant's hands and legs in January 2021, he found claimant's energy levels to be steadily improving and that claimant was "trying to keep busy around the house." (Tr. 18) (citing Tr. 382, 385, 388). In his discussion of Dr. Mault's opinion, the ALJ also referenced records from the treating oncologist and Dr. Mault's own records, stating that claimant showed good tolerance to the treatment, "denied significant symptoms incident to

CML even before he started treatment," and had generally "unremarkable" exams. (Tr. 19) (citing 283, 395, 407, 409, 412, 463, 472-73, 486-87).

Contrary to Plaintiff's assertions, the undersigned is not persuaded that the ALJ mischaracterized medical evidence. The ALJ acknowledged claimant's medical record, referencing claimant's symptoms both immediately before and after being diagnosed, including his follow-up visits up to December 2021. (Tr. 18). The ALJ also discusses claimant's reported cramping in his extremities and mild tachycardia, but concluded that the records showed heightened energy levels and good tolerance throughout the treatment period sufficient to warrant the RFC decision. (Tr. 18-19). Conversely, Plaintiff does not discuss the reported increases in claimant's energy levels, the improvement in his labs, or good tolerance to the treatment. See (Document No. 9). "[W]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Campero, 2023 WL 3590697, at *5 (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Additionally, "the substantial evidence standard presupposes… a zone of choice within which the [ALJ] can go either way, without interference by the courts." Moretz v. Comm'r of Soc. Sec. Admin., 5:21-CV-4-MR-WCM, 2022 WL 4007304, at *3 (W.D.N.C. Aug. 10, 2022) (internal quotations and citations omitted). Therefore, the ALJ's statement that the "medical evidence of record shows the claimant responded well to [chemotherapy] treatment, including good tolerance, and [claimant] denied significant symptoms incident to CML even before he started treatment," reflects that the ALJ's conclusion after reviewing the medical evidence in its entirety was proper. (Tr. 19).

Plaintiff's second argument is that the ALJ failed to explain how Dr. Mault's opinion was not consistent with or supported by the record, in violation of 20 C.F.R. § 416.920c. Pursuant to 20 C.F.R. § 416.920c(b)(2), the two "most important" factors when considering the persuasiveness

of a medical opinion are supportability and consistency. Therefore, the ALJ is required to articulate how he considered consistency and supportability in his RFC determination but is not required to articulate factors three through five. 20 C.F.R. § 416.920c(b)(2). Supportability is an internal check that assesses the relevance of "objective medical evidence and supporting explanations from the source itself." Campero, 2023 WL 3590697, at *5 (internal quotations and citations omitted). The more relevant such evidence and explanations, the more persuasive the medical opinions or prior administrative medical findings will be. 20 C.F.R. § 416.920c(c)(1). Consistency is an external check that references evidence from "other medical and nonmedical sources." Campero, 2023 WL 3590697, at *5 (internal quotations and citations omitted). The more consistent the opinion is with other medical and nonmedical sources, the more persuasive it will be. 20 C.F.R. § 416.920c(c)(2).

The undersigned is satisfied that the ALJ adequately weighed Dr. Mault's medical opinion pursuant to 20 C.F.R. § 416.920c. In discussing supportability for Dr. Mault's medical source statement, the ALJ found that while Dr. Mault concluded Plaintiff would be limited by his "severe" CML, and his employability would be restricted by these limitations, Dr. Mault's own examinations of the claimant throughout the current adjudication period were "generally unremarkable except for tachycardia at some visits, which was typically mild." (Tr. 19) (citing 283, 463, 472-73). Dr. Mault's examinations of the claimant were consistently negative for most symptoms, except for constipation, heartburn, seasonal allergies, and mild tachycardia. (Tr. 462, 466, 471, 475). Clearly, then, the ALJ adequately analyzed the supportability element when weighing Dr. Mault's opinion. See 20 C.F.R. § 416.620c(c)(1).

With regard to consistency, the ALJ addresses the inconsistencies between Dr. Mault's medical source statement and notes from Dr. Heaberlin at the Haywood Infusion Center. (Tr. 19).

The ALJ found that medical records showed claimant "responded well to treatment of his CML… including good tolerance," and "denied significant symptoms incident to CML even before he started treatment." (Tr. 19) (citing Tr. 395, 407, 409, 412, 486-87). Notes from Dr. Heaberlin confirm claimant's reports of higher energy levels, tolerance to the chemotherapy, and indicate that claimant "is trying to keep busy around the house" and "trying to keep busy making candles." (Tr. 382, 385).

Plaintiff argues that he suffered "numerous complications" from his chemotherapy, and recounts notes from his visits to Dr. Mault and Dr. Heaberlin in support of his assertion. (Document No. 9, 10-11). However, in reviewing the ALJ's decision, district courts should not re-weigh conflicting evidence or substitute its judgment for that of the ALJ. Craig, 76 F.3d at 589. Given Dr. Heaberlin's examinations of claimant, it was reasonable for the ALJ to determine that Dr. Mault's opinion was inconsistent with other medical evidence in the record. Further, "the Fourth Circuit held that it is proper for an ALJ to reject a physician's opinion where the physician's own treatment notes do not confirm determination of 'disability,' the record contains benign findings, and there is evidence of significant daily activities." Tranter v. Kijakazi, 1:20-CV-280-MOC, 2021 WL 5018669, at *6 (W.D.N.C. Oct. 28, 2021).

While the undersigned is sympathetic to the concerns raised by Plaintiff, especially given his CML diagnosis and young age, Plaintiff is essentially asking this Court to re-weigh the evidence. The undersigned finds that the ALJ's opinion was supported by substantial evidence, and it is not the role of the Court to re-weigh this evidence. The ALJ clearly took Plaintiff's complaints of headaches, fatigue, and lower back pain into consideration given that his RFC determination was more restrictive than the "full range of light work" that was recommended by two State agency medical consultants. (Tr. 18). It is evident that the ALJ was aware of Plaintiff's

severe CML; nonetheless, the following paragraph demonstrates the ALJ's consideration of all evidence in making his RFC determination:

> Based on the foregoing, the undersigned finds that the claimant has the above residual functional capacity assessment, which is supported by the lay and medical evidence, including the medical opinions from Drs. Martin and Simpkins. The claimant has severe CML. However, the claimant's bloodwork and the physical findings, level, and efficiency of treatment, as well as other factors aside from the medical evidence support that the claimant's CML is not disabling. As such, the undersigned finds that claimant is capable of sustaining work within the functional parameters of this residual functional capacity assessment.

(Tr. 19). Therefore, the undersigned concludes that the evaluation of Dr. Mault's opinion is in line with 20 C.F.R. § 416.920c, and that substantial evidence supports the ALJ's conclusion that Dr. Mault's opinion was not persuasive. Id.

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Commissioner's decision be **AFFIRMED.**

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days**

of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 11, 2024

David C. Keesler
United States Magistrate Judge

15

Case 1:22-cv-00271-KDB-DCK   Document 17   Filed 06/11/24   Page 15 of 15